UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JACQUELINE CRUZ,

                                    Plaintiff,

v.                                                                  3:13-CV-00723

                                                                    (MAD/TWD)

CAROLYN COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

APPEARANCES:                                OF COUNSEL:

LACHMAN & GORTON                            PETER A. GORTON, ESQ.
*Counsel for Plaintiff*
1500 Main Street
PO Box 89
Endicott, NY 13761-0089

HON. RICHARD S. HARTUNIAN                   ELIZABETH ROTHSTEIN, ESQ.
United States Attorney for the              Special Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL                   STEPHEN P. CONTE, ESQ.
Social Security Administration              Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned for report and recommendation by the

Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Northern District of New York Local Rule 72.3.  This case has proceeded in accordance with

General Order 18 of this Court which sets forth the procedures to be followed when appealing a

denial of Social Security benefits.  Both parties have filed briefs.  Oral argument was not heard.

For the reasons discussed below, it is recommended that the decision of the Commissioner be

affirmed and the Complaint (Dkt. No. 1) be dismissed.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is presently 26 years old.  (T. at 32.[1])  She completed 11th grade and, at the time

of her hearing on December 20, 2011, she was attending classes two days per week to obtain her

GED.  (T. at 34, 43.)  She worked as an assembler at a Felchar Manufacturing and as a home

attendant for elderly clients at Southern Tier Independence Center.  (T. at 34-35.)   Plaintiff

alleges disability due to hearing loss, migraine headaches, low back pain, and hip pain. (T. at 37-

40, 140-41.)

Plaintiff's application for disability insurance benefits and SSI is dated August 9, 2010.

(T. at 110.)  The application was denied on October 25, 2010.  (T. at 58.)  Plaintiff requested a

hearing before an Administrative Law Judge ("ALJ").  (T. at 64.)  The hearing was held on

December 20, 2011.  (T. at 29.)  On January 5, 2012, the ALJ issued a decision finding that

Plaintiff was not disabled.  (T. at 11.)  The ALJ's decision became the final decision of the

Commissioner when the Appeals Council denied Plaintiff's request for review on May 31, 2013.

(T. at 1.)  Plaintiff commenced this action on June 21, 2013.  (Dkt. No. 1.)

---

[1]        The abbreviation "T" refers to the Administrative Transcript.  (Dkt. No. 9.)

## II.    APPLICABLE LAW

### A.    Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2006). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a) (2012)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920 (2012). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step

3

two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R.] §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the

determination of whether there is substantial evidence in the record to support the decision. 42

U.S.C. § 405(g) (2012); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set

forth the crucial factors justifying his findings with sufficient specificity to allow a court to

determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d

241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

"Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255,

258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence

scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v.

Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229

(1938)). "To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court

cannot substitute its interpretation of the administrative record for that of the Commissioner if

the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d

773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**III.    THE ALJ'S DECISION**

Here, the ALJ found at step one that Plaintiff had not engaged in substantial gainful

activity since July 1, 2010, her alleged onset date. (T. at 16.) At step two, the ALJ found that

Plaintiff's profound right-sided hearing loss was a "severe" impairment. (T. at 16-19.) At step

three, the ALJ found that Plaintiff's hearing impairment, although severe, did not individually or

in combination meet or equal any of the criteria of a section of the Listing of Impairments ("Listings"), set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. at 19.) Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and concluded that she retained the ability to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; stand and walk for a total of six hours; sit for a total of six hours; she should wear protective noise protection when exposed to greater than 75 decibels ("dB") continuously, and her instructions and interface with others should be given so that she could see the speaker's face. (T. at 19-22.) At step four, the ALJ concluded that Plaintiff did not have past relevant work. (T. at 22.) At step five, the ALJ concluded that Plaintiff was not disabled because jobs existed in significant numbers in the national economy that Plaintiff could perform. (T. 22-24.) Thus, the ALJ denied Plaintiff's claim for disability benefits. (T. at 24.)

## IV.  THE PARTIES' CONTENTIONS

Plaintiff claims that the ALJ erred by: (1) failing to find Plaintiff's scoliosis, back pain, and migraines/headaches as severe impairments; (2) failing to properly establish Plaintiff's RFC which includes a failure to follow the treating physician rule and a failure to properly assess Plaintiff's credibility; and (3) failing to obtain the testimony of a vocational expert. (Dkt. No. 13.)

Defendant contends that the ALJ's decision applied the correct legal standards and is supported by substantial evidence and thus should be affirmed. (Dkt. No. 14.)

## V.  DISCUSSION

### A.  Severity of Impairments

At the second step of the evaluation, the medical severity of a claimant's impairments is

considered. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2012). A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities". *Id.* at §§ 404.1520(c), 404.1521, 416.920(c), 416.921. "Basic work activities" are defined as "the abilities and aptitudes necessary to do most jobs." *Id.* at §§ 404.1521(b), 416.921(b). These include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out, remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. *Id.*; *see also Ianni v. Barnhart*, Civ. No. 02-74A, 2005 WL 3220220, *11 (W.D.N.Y. Nov. 18, 2005); *Camacho v. Apfel*, Civ. No. 97-6151, 1998 WL 813409, at *6 (E.D.N.Y. July 22, 1998). The claimant-plaintiff bears the burden of presenting evidence to establish severity. 20 C.F.R. § 404.1512(c) (2012). The claimant-plaintiff must demonstrate "that the impairment has caused functional limitations that precluded him from engaging in any substantial gainful activity for one year or more." *Perez v. Astrue*, 907 F.Supp.2d 266, 272 (N.D.N.Y. 2012) (citing *Rivera v. Harris*, 623 F.2d 212, 215 (2d Cir. 1980)).

A finding of not severe should be made if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work. *Id*. at 271; SSR 85-28, 1985 WL 56858, at * 2 (1985).

Plaintiff maintains that the ALJ failed to properly assess her scoliosis, back pain, and headaches/migraines as severe impairments. (Dkt. No. 13 at 6-7.[2]) Plaintiff also claims the ALJ

---

[2] Page numbers in docket entries refer to the page numbers assigned by the Court's electronic filing system.

failed to develop the record regarding her tinnitus, and how it may affect her migraines.  *Id.* at 8-9.  Defendant asserts that Plaintiff did not meet her burden to show that any of these claimed impairments caused functional limitations that significantly limited or precluded her from engaging in basic work activities.  (Dkt. No. 14 at 7.)  The Court agrees with Defendant.

### 1.    Headaches/Migraines

Initially, when Plaintiff filed her application for disability benefits, she alleged that her ability to work was limited only by hearing loss.  (T. at 144.)  In a function report completed in connection with her application, she detailed her daily activities and alleged functional limitations stemming only from hearing loss.  (T. at 135-42.)  Neither migraines, headaches, scoliosis, or low back pain were mentioned or listed.  (T. at 135-44.)  Yet when asked at the hearing what was her most significant medical condition keeping her from working full time, she listed migraines, followed by back and hip pain, followed by her hearing loss.  (T. at 38-40.)  While she listed treatment for headaches in a report completed in connection with her appeal, and alleged difficulty caring for her personal needs when she had headaches, she nevertheless acknowledged that her daily activities had not changed and she continued to work 12 hours per week.  (T. at 166-72.)

The ALJ considered the evidence pertaining to Plaintiff's headaches and found that her impairment did not cause more than a minimal limitation in her ability to perform basic work activities, and therefore was nonsevere.  (T. at 17-18.)  The ALJ noted that Plaintiff had only sought treatment for her headaches on six occasions between August 17, 2010, and August 19, 2011.  (T. at 17-18, 231-32, 305, 307-08, 314-15, 317, 406.)  On September 22, 2010, Plaintiff reported to neurologist Dr. Rasheed that she had been experiencing headaches off and on over the

last year and a half, but Dr. Rasheed's neurologic examination was unremarkable. (T. at 17-18, 307-08.) When Plaintiff returned to Dr. Rasheed on January 13, 2011, she reported no significant change in her headache frequency, and her neurologic examination was again within normal limits. (T. at 18, 305.) Plaintiff reported that Imitrex was working well, and she had run out of Topamax six weeks prior but had not called the office to request a refill. (T. at 305.) Dr. Rasheed prescribed a trial of Elavil. (T. at 305.) When Plaintiff presented to primary care physician Dr. Galu on March 3, 2011, for evaluation of chest pain, Dr. Galu noted in the subjective portion of the note that she was "overall in good health except for migraine headaches." (T. at 317.) In the assessment and plan portion of the encounter note, Dr. Galu noted "Migraine headache: She has not had any in the last month or so." *Id.*

Plaintiff argues that Dr. Galu's treatment note contained an error, or that the ALJ misread the treatment note, and that Plaintiff instead had ongoing headaches as alleged in the headache log that she completed for Dr. Rasheed. (Dkt. No. 13 at 5-6; T. at 197-222.) This contention is pure speculation. There is no indication that Dr. Galu misunderstood Plaintiff. Moreover, Plaintiff did not mention headaches at all during her following visit with Dr. Galu three weeks later on March 24, 2011. (T. at 316.) Plaintiff did not complain of headaches until three months later, when she returned to primary care physician Dr. Talati on July 26, 2011. (T. at 314-15.) On that date, Plaintiff presented primarily with complaints of back pain, and with regard to headaches, Dr. Talati only advised Plaintiff to take Tylenol and referred her to Dr. Rasheed. (T. at 315.) In addition, when Plaintiff sought treatment for a flare up of low back pain on July 17, 2011, she reported a past medical history of migraines, but under the neurologic systems review, the report indicates "no headache or dizziness." (T. at 337-38.)

On August 19, 2011, Plaintiff complained to Dr. Rasheed of some worsening of her headaches, but she acknowledged that she had not been taking Elavil as prescribed, and her neurologic examination on that date continued to be unremarkable. (T. at 406-07.) Dr. Rasheed again prescribed a course of Elavil. (T. at 406.) An August 26, 2011, brain CT scan was also negative. (T. at 408-09.)

Dr. Rasheed opined that "sometimes" Plaintiff's headaches "may" prevent her from working. (T. at 524-25.) This is a rather ambiguous, conclusory opinion. Since Plaintiff must demonstrate "that the impairment has caused functional limitations that preclude [. . . her] from engaging in any substantial gainful activity for one year or more," the ALJ correctly found that Plaintiff's migraine headaches were not severe. *Perez*, 907 F.Supp.2d at 272 (citation omitted). Furthermore, the ALJ properly considered the opinion of Dr. Rasheed according it only little weight, after considering the infrequency of Dr. Rasheed's treatment and the lack of support for his assessment. *See* T. at 18; 20 C.F.R. §§ 404.1527(d), 416.927(d).[3] The ALJ noted that Dr. Rasheed had only examined Plaintiff for headaches on three occasions between August 22, 2010, and August 19, 2011, and his treatment notes did not support his assessed limitations. (T. at 18, 305, 307-08, 406.) During Dr. Rasheed's August 19, 2011, examination, Plaintiff denied any issues of focal extremity numbness, weakness, paresthesias, diplopia, circumoral numbness, or vertigo, and she had not passed out due to headaches. (T. at 406.) Plaintiff did not take Elavil as prescribed, and Dr. Rasheed again prescribed that medication. (T. at 406.) The record does not document any additional treatment by Dr. Rasheed between his last examination on August 19,

---

[3]        Now 20 C.F.R. §§ 404.1527(c) and 416.927(c) per amendments effective March 26, 2012.

2011, and the completion of his report on December 8, 2011. (T. at 525.) Notably, during a September 23, 2011, visit to primary care physician Dr. Talati, Plaintiff did not even complain of headaches. (T. at 477-78.) As stated above, the Court finds substantial evidence supports the ALJ's determination that Plaintiff's migraine headaches were not severe.

Plaintiff asserts that based upon the December 5, 2011, hearing evaluation by Dr. Wanamaker, the ALJ should have explored the "potential connection" between Plaintiff's complaints of tinnitus and migraines. (Dkt. No. 13 at 8-9; T. at 526-27.) However, the ALJ considered Dr. Wanamaker's evaluation which revealed profound sensorineural hearing loss on the right and hearing within normal limits on the left, as well as an inability to understand speech on the right and an excellent word comprehension score of 100 percent on the left. (T. at 20, 526-28.) Plaintiff complained of some left-sided tinnitus, which she thought overlapped with her headaches, and Dr. Wanamaker referred her to another doctor, Dr. Malak, for a second opinion regarding her complaints. (T. at 526-27.) However, there is no evidence in the record that she ever saw Dr. Malak. Dr. Wanamaker also counseled Plaintiff on tinnitus and tinnitus management, and advised her to be careful about noise protection on the left, but he did not recommend wearing a hearing aid on the left because her hearing on that side was normal. (T. at 20, 527.) The record does not establish any further complaints, treatment, or limitations stemming from Plaintiff's tinnitus or connection between tinnitus and headaches, and Plaintiff does not allege that she received any further evaluation for tinnitus. (Dkt. No. 13 at 8-9.)

Accordingly, the ALJ was not obligated to further develop the record regarding the Plaintiff's tinnitus. *See Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete

medical history,' the ALJ is under no obligation to seek additional information . . . .") (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir.1996).

Plaintiff also argues that the ALJ used an improper legal standard at step two of the analysis when referring to whether her headaches prevented her from working. (Dkt. No. 13 at 9.) The ALJ noted under Medical Policy 09-036, "[m]igraine headaches . . . will rarely prevent a person from working for a continuous 12 months." (T. at 18.) Plaintiff notes that the issue at step two is not whether the Plaintiff is disabled, but rather whether the evidence establishes a slight abnormality or combination of abnormalities which have "no more than a minimal effect on an individual's ability to work" such that the impairment or combination of impairments would be nonsevere. *See* Dkt. No. 13 at 9 (citing SSR 85-28, 1985 SSR LEXIS 19, at *6-7, 1985 WL 56858, at * 2 (1985); 20 C.F.R. § 404.1521). Plaintiff's argument that the ALJ applied a higher standard than required at step two is without merit. As noted above, Plaintiff bears the burden of presenting evidence to establish severity. 20 C.F.R. § 404.1512(c) (2012). Since a plaintiff, to show that an impairment is severe, must demonstrate "that the impairment has caused functional limitations that precluded him from engaging in any substantial gainful activity for one year or more," *Perez*, 907 F.Supp.2d at 272 (citation omitted), the ALJ did not apply an improper legal standard at step two regarding Plaintiff's migraine headaches.

## 2. Scoliosis/Back Pain

Plaintiff also argues that the ALJ erred in finding that her back pain was not severe. (Dkt. No. 13 at 10-11.) For the reasons that follow, the Court finds that the ALJ properly considered the evidence during the relevant time period, and it supports the finding that Plaintiff's low back impairment was not severe.

Plaintiff initially claims that the ALJ did not address "numerous findings of tenderness in the lumbosacral and thoracic areas." (Dkt. No. 13 at 10; T. at 233, 235, 237, 239, 261.) However, this evidence pre-dates the relevant period. Other medical evidence from the relevant time period shows that she had one emergency department visit on July 17, 2011, for back pain. (T. at 337-39.) While she complained of being "unable to walk because of pain," the physical exam revealed "mild tenderness to palpation of the left lower extremity at the knee, also mild restriction of movement." *Id.* at 338. She was discharged that day with pain medication. *Id.* at 339.

Following that emergency department visit, Plaintiff presented to orthopedist Dr. Van Gorder on August 11, 2011, complaining of discomfort in her low back and down her left leg since bending over about one month prior. (T. at 493.) Examination revealed curvature of the spine and a little bit of weakness to dorsiflexion of the left foot, but leg strength was satisfactory, there was not much discomfort with flexion and extension of the spine, there were no spasms, focal neurologic deficits, atrophy, or swelling, and deep tendon reflexes and sensation were intact. (T. at 493.)

After reviewing radiographs, Dr. Van Gorder concluded that Plaintiff had a transitional S1 with a probable pseudoarthrosis left side, mild scoliosis. (T. at 322, 493.) The July 17, 2011, lumbar spine X-rays revealed no significant radiographic change when compared with March 20, 2009, X-rays. (T. at 322.) Dr. Van Gorder ordered an MRI to rule out an occult herniation and to further evaluate the pseudoarthrosis at L5-S1. *Id.*; *see also* T. at 522. The subsequent lumbar spine MRI of August 20, 2011, was essentially unremarkable, showing no evidence of spinal stenosis, foraminal stenosis, or disc herniation. (T. at 523.) In addition, Dr. Rasheed's physical

examination on August 19, 2011, also showed good motor tone and power, a normal gait with good associated movements, and normal sensation and reflexes.  (T. at 406.)

When Plaintiff returned to Dr. Van Gorder on September 1, 2011, he noted that the MRI was negative for disc compression, but did reveal abnormalities at L5-S1, which he intended to further evaluate.  (T. at 492.)  Examination on that date revealed a slight leg length discrepancy and quad weakness on the left side, but less weakness with dorsiflexion of the left foot.  *Id.* There are no further office visit notes from Dr. Van Gorder.

On September 23, 2011, Plaintiff reported to primary care physician Dr. Talati that her low back pain was only two to three out of ten in intensity, and she denied any weakness, tingling, or numbness.  (T. at 477.)  Dr. Talati advised Plaintiff to decrease ibuprofen, and she noted that Plaintiff would continue with physical therapy, which was helping her.  (T. at 477.)

Also during the relevant time period, Plaintiff underwent a nerve conduction study of her left lower extremity ordered by Dr. Van Gorder and performed by Dr. Rasheed.  (T. at 519-20.) In addition to the study being normal, she denied weakness in the lower extremities.  *Id.* at 519. A neurologic exam did not reveal any motor weakness, her reflexes were symmetrical, and there was no radicular distribution sensory loss.  *Id.*

Accordingly, the medical evidence concerning Plaintiff's low back does not reach a severe level because there has been no showing of functional limitations precluding substantial gainful activity for one year or more.  *Perez*, 907 F. Supp. at 272.  An impairment is severe if it causes more than minimal functional limitations.  20 C.F.R. § 416.924(c).  If the disability claim rises above the de minimis level, then further analysis is warranted.  *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995).  Here, the ALJ's decision addressed the medical evidence of

Plaintiff's low back condition and appropriately determined that Plaintiff's back pain/scoliosis condition was nonsevere.  *See* T. at 17.  However, since the ALJ found that Plaintiff's hearing loss was a severe condition, he properly continued with the five step analysis.

### B.    Residual Functional Capacity

A claimant's RFC is the most he can do despite his limitations.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2012).  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.  A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 42 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.  20 C.F.R. 404.1546(c) (2012).  In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe.  20 C.F.R. § 404.1545(a) (2012).  Age, education, past work experience, and transferability of skills are vocational factors to be considered.  *Martone v. Apfel*. 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).  Physical abilities are determined by evaluation of exertional and nonexertional limitations.  Exertional limitations include claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle.  20 C.F.R. § 404.1569a(b) (2013).

The ALJ "is not required to accept the claimant's subjective complaints without question;

he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2010). Once the ALJ has resolved a claimant's complaints of pain, he can then evaluate exertional and non-exertional limitations. *Lewis v. Apfel*, 62 F. Supp. 2d 648, 658 (N.D.N.Y. 1999).

The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted). In assessing RFC, the ALJ's findings must specify the functions a plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010) (citation omitted). RFC is then used to determine the particular types of work a claimant may be able to perform. *Whittaker*, 717 F. Supp. 2d at 440.

Plaintiff contends that the ALJ's RFC finding is unsupported by substantial evidence. (Dkt. No. 13 at 13.) She argues that the ALJ violated the treating physician rule by asserting there is no medical basis for the ALJ to disregard the opinions of Dr. Van Gorder and Dr. Rasheed. *Id.* at 13-17. Plaintiff also argues that the ALJ's disregard of the opinion of Dr. Wiesner, the consultative examiner, was error. *Id.* at 16. Finally, Plaintiff claims that the ALJ's failure to consider Plaintiff's headaches/migraines in determining her RFC was error and that his assessment of her credibility is not supported by substantial evidence. *Id.* at 17-18.

### 1. Medical Opinions

#### a. Treating Physician Rule

The medical opinions of a claimant's treating physician are generally given more weight than those of other medical professionals. "If . . . a treating source's opinion . . . is well-

supported by medically clinical and laboratory techniques and is not inconsistent with other

substantial evidence . . . [it] will [be] give[n] controlling weight." 20 C.F.R. § 404.1527(c)(2)

(2012).  Medically acceptable techniques include consideration of a patient's report of

complaints, or the patient's history, as essential diagnostic tools.  *Green-Younger v. Barnhart*,

335 F.3d 99, 107 (2d Cir. 2003).  Generally, the longer a treating physician has treated the

claimant and the more times the claimant has been seen by the treating source, the more weight

the Commissioner will give to the physician's medical opinion.  *Burgess v. Astrue*, 537 F.3d 117,

129 (2d Cir. 2008) (citing 20 C.F.R. § 404.1527(c)(2)(I)).

An opinion from a treating source that the claimant is disabled cannot itself be

determinative.  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).  However, a lack of specific

clinical findings in the treating physician's report is not, by itself, a reason to justify an ALJ's

failure to credit the physician's opinion.  *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d

Cir. 1998) (citing *Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998)).

"An ALJ who refuses to give controlling weight to the medical opinion of a treating

physician must consider various factors to determine how much weight to give to the opinion."

*Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted).  This analysis must be

conducted to determine what weight to afford any medical opinion.  20 C.F.R. § 404.1527(c).

This is necessary because the ALJ is required to evaluate every medical opinion received.  *Id.;*

*see also Zabala v. Astrue*, 595 F.3d 402 (2d Cir. 2010) (finding that the ALJ failed to satisfy the

treating physician rule when he discounted a report because it was incomplete and unsigned).

These factors include: (1) the length of the treatment relationship and frequency of examinations;

(2) the nature and extent of treatment relationship; (3) the medical evidence in support of the

opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6) (2012).

Generally, the opinion of the treating physician will not be afforded controlling weight when the treating physician issued opinions that were not consistent with those of other medical experts and is contradicted by other substantial evidence in the record. *Halloran*, 362 F.3d at 32; 20 C.F.R. § 404.1527(c)(2); *Snell*, 177 F.3d at 133 ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given."). Other findings, including the ultimate finding of whether the claimant is disabled, are reserved to the Commissioner. *Snell,* 177 F.3d at 133.

The Regulations require the Commissioner's notice of determination or decision to "give good reasons" for the weight given a treating source's opinion. 20 C.F.R. § 404.1527(c)(2) (2012). This is necessary to assist the court's review of the Commissioner's decision and it "let[s] claimants understand the disposition of their cases." *Halloran*, 362 F.3d at 33 (citing *Snell*, 177 F.3d at 134). Failure to provide "good reasons" for not crediting the opinion of a claimant's treating physician is a ground for remand. *Snell,* 177 F.3d at 133; *Halloran,* 362 F.3d at 32-33. However, remand is unnecessary where application of the correct legal standard could lead to only one conclusion. *Schaal*, 134 F.3d at 504.

### b. Thomas Van Gorder, M.D.

Dr. Van Gorder noted in his November 23, 2011, report that his assessment pertained only to the period August 11, 2011, to September 1, 2011. (T. at 491.) The ALJ correctly noted

that Dr. Van Gorder only began treating Plaintiff on August 11, 2011, and he treated her on only one other occasion, September 1, 2011. (T. at 22, 492-93.) The ALJ also noted that Dr. Van Gorder's restrictive assessment including that Plaintiff could not lift any weight and could not stand for two hours was not consistent with the objective studies, including the lumbar spine MRI, X-rays, and EMG/nerve conduction studies, which were all essentially within normal limits other than showing Plaintiff's mild scoliosis. (T. at 17, 22, 322, 404-05, 490, 492, 523.) The ALJ further noted that Dr. Van Gorder's two physical examinations revealed minimal clinical findings, including a little bit of quad or left foot dorsiflexion weakness and slight leg length discrepancy, but no spasms, focal neurologic deficits, atrophy, or swelling; and deep tendon reflexes and sensation were intact. (T. at 22, 492-93.)

The Court finds the ALJ's determination to afford minimal weight to Dr. Van Gorder's opinion was supported by substantial evidence. The determination shows that the ALJ considered the length of the treatment relationship between Plaintiff and Dr. Van Gorder, the frequency of examinations, the diagnostic test results as related to the opinion, and the findings of Dr. Van Gorder on examination of Plaintiff. The ALJ properly considered Dr. Van Gorder's opinion and gave good reasons for the weight he assigned it.

c.      **Aamir Rasheed, M.D.**

Likewise, the ALJ properly gave little weight to the opinion of Dr. Rasheed. (T. at 18, 524-25.) Dr. Rasheed saw Plaintiff on only three occasions for Plaintiff's headaches and/or migraines, and both his treatment notes and the other evidence of record fail to support the assessed limitations stemming from Plaintiff's headaches. (T. at 18, 305, 307-08, 406). Also contrary to Plaintiff's contention that the ALJ did not consider Plaintiff's headaches/migraines in

determining her RFC, the ALJ explicitly considered the evidence pertaining to alleged functional limitations stemming from Plaintiff's headaches. (T. at 18.)

As noted above, Dr. Rasheed opined in a non-specific and conclusory fashion that "sometimes" Plaintiff's headaches "may" prevent her from working. (T. at 524-25.) After considering the infrequency of Dr. Rasheed's treatment and the lack of support for his assessment, the ALJ appropriately considered the opinion of Dr. Rasheed according it only little weight. (T at 18.) The ALJ noted that Dr. Rasheed had only examined Plaintiff for headaches on three occasions between August 22, 2010, and August 19, 2011, and his treatment notes did not support his vague limitations. (T. at 18, 305, 307-08, 406.) During Dr. Rasheed's August 19, 2011, examination, Plaintiff denied any issues of focal extremity numbness, weakness, paresthesias, diplopia, circumoral numbness, or vertigo, and she had not passed out due to headaches. (T. at 406.) Plaintiff did not take Elavil as prescribed, and Dr. Rasheed again prescribed that medication. *Id.* The record does not document any additional treatment by Dr. Rasheed for headaches between his last examination on August 19, 2011, and the completion of his report on December 8, 2011. (T. at 404-09, 524-25.[4]) In that interim, Plaintiff did not complain of headaches during a September 23, 2011, visit to primary care physician Dr. Talati, nor did she complain of headaches to Dr. Van Gorder on September 1, 2011. (T. at 477, 492.)

### d.    Lawrence Wiesner, D.O.

Plaintiff also claims that the ALJ did not properly credit the opinion of consultative examiner Dr. Wiesner. (Dkt. No. 13 at 16; *see also* T. at 470-476.) Dr. Wiesner opined that

---

[4]    Dr. Rasheed did perform a nerve conduction study of Plaintiff's left lower extremity on October 5, 2011, which was normal.

Plaintiff was only mildly restricted by her low back pain; that she could lift 20 pounds comfortably and frequently, but would be restricted from continuous repetitive lifting, pushing, and pulling of any weight greater than 20 pounds; and that she was otherwise unrestricted with regard to her upper extremities.  (T. at 472, 474.)  The Court finds that the ALJ properly credited this portion of Dr. Wiesner's evaluation, as it was supported by his own examination findings and was consistent with the other evidence of record.  *See* T. at 21, 471-72; 20 C.F.R. §§ 404.1527(d)(3)-(4), 416.927(d)(3)-(4).  For the reasons discussed below, the ALJ properly declined to credit Dr. Wiesner's additional conclusions that Plaintiff could stand and walk for about two hours and sit for less than two hours during an eight-hour day, and that she needed the opportunity to shift at will from sitting or standing/walking.  (T. at 21, 473-76.)

The ALJ noted that these conclusions were not supported by Dr. Wiesner's own examination findings, and were inconsistent with the other evidence of record, including the treatment record.  *See* T. 21-22, 322, 471-72, 477-82, 492-93, 522-23; *Pellam v. Astrue*, 508 Fed. Appx. 87, 89-90 (2d Cir. Jan. 28, 2013) (finding no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations; and even though ALJ justifiably did not credit all of the consultative examiner's findings, the consultative examiner's opinion largely supported the ALJ's RFC determination).  Dr. Wiesner's examination revealed slightly reduced (4/5) muscle strength in the left lower extremity and full (5/5) strength in the right; symmetric deep tendon reflexes and intact sensation in lower extremities; and Plaintiff ambulated unrestricted without any limp, lurch, or antalgia.  (T. at 471-72.)  Examination of Plaintiff's upper extremities was unremarkable, revealing no restrictions and intact muscle strength.  (T. at 471.)

Plaintiff also briefly asserts that the ALJ substituted his own medical opinion for that of the examining physicians. (Dkt. No. 13 at 15.) An "ALJ cannot arbitrarily substitute his own judgment for a competent medical opinion." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (citing *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)). However, the ALJ's RFC finding need not track any one medical opinion. *See Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")). The ALJ is responsible for determining a claimant's RFC. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946(c). In determining the RFC, the ALJ must make a decision based on all of the relevant evidence, including a claimant's medical record, statements by physicians, and a claimant's description of her limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). Here, the ALJ did not substitute his own medical opinion for the opinions of the examining physicians. The substantial evidence of record supports the ALJ's decision that Plaintiff's impairments, singly or in combination, did not preclude her from performing a range of light work.

### 2. Plaintiff's Credibility

The Court reviews an ALJ's findings of fact under a substantial evidence standard. "It is the function of the Commissioner, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dep't of Health*

*& Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (citation omitted).  In making a credibility determination, the hearing officer is required to take the claimant's reports of pain and other limitations into account.  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.  20 C.F.R. § 404.1529 (2012); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010); (SSR 96-7p), 1996 WL 374186, at *5 (S.S.A. 1996).  The ALJ is required to consider all of the evidence of record in making his credibility assessment.  *Genier,* 606 F.3d at 50 (citing 20 C.F.R. §§ 404.1529, 404.1545(a)(3)).  First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms.  SSR 96-7p.  This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms.  *Id.*  If no impairment is found that could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities.  An individual's statements about his pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled.  *Id.*

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to the consider extent to which the claimant's symptoms can reasonably be accepted as consistent with other objective medical evidence and other evidence.  *Genier,* 606 F.3d at 49; *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient to establish disability because they were unsupported by objective medical evidence tending to support a conclusion that he has a

medically determinable impairment that could reasonably be expected to produce the alleged symptoms); *see also* SSR 96-7p ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."). This includes evaluation of the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. *Genier,* 606 F.3d at 49.

The ALJ must consider all evidence of record, including statements the claimant or others make about his impairments, his restrictions, daily activities, efforts to work, or any other relevant statements the claimant makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony during administrative proceedings. *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1512(b)(3)). A claimant's symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone. SSR 96-7p. When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3) (2012).

"An [ALJ] may properly reject [subjective complaints] after weighing the objective

medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but

must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the

determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651

(N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5

(S.D.N.Y. Mar. 25, 1999) (citing *Aponte v. Sec'y, Dept. of Health & Human Servs*., 728 F.2d 599

(1984); *Ferraris v. Heckler*, 728 F.2d 582 (1984))). "A finding that a [claimant] is not credible

must . . . be set forth with sufficient specificity to permit intelligible plenary review of the

record." *Williams ex rel Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988) (citation

omitted) (finding that failure to make credibility findings regarding claimant's critical testimony

undermines the Secretary's argument that there is substantial evidence adequate to support his

conclusion that claimant is not disabled). "Further, whatever findings the ALJ makes must be

consistent with the medical and other evidence." *Id*. at 261 (citation omitted) ("[A]n ALJ must

assess subjective evidence in light of objective medical facts and diagnoses.").

"Even where the administrative record may also adequately support contrary findings on

particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are

supported by substantial evidence." *Genier*, 606 F.3d at 49 (citing *Schauer v. Schweiker*, 675

F.2d 55, 57 (2d Cir. 1982)). An ALJ's evaluation of a plaintiff's credibility is entitled to great

deference if it is supported by substantial evidence. *Murphy v. Barnhart*, Civ. No. 00-9621, 2003

U.S. Dist. LEXIS 6988, at *29-30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp.

2d 140, 147 (E.D.N.Y. 1999); *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595,

at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's

credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.")).

A review of the decision reveals that the ALJ considered the relevant factors and provided specific reasons for his credibility finding, which is supported by the evidence in the record. *See* T. at 16-21; 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. The Plaintiff's allegations were not fully supported by the objective medical evidence as reviewed above. By the time of the administrative hearing, Plaintiff had tried physical therapy, which she reported was helpful, and she was currently taking only one medication. (T. at 20-21, 41, 410-68, 477.) *See also* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v). The ALJ properly noted that Plaintiff had maintained extensive activities of daily living. *See* T. at 20-21; 20 C.F.R. §§ 404.1529(c)(3)(I), 416.929(c)(3)(I). Plaintiff was able to care for her personal needs and those of her young child, perform household chores, do laundry, cook, shop, manage her money, visit with family, and she had a driver's license and could use public transportation. (T. at 20-21, 33, 42-45, 135-40.) In addition, even though it was at less than substantial gainful activity levels, Plaintiff had worked on a continuous basis throughout the relevant period, including as a home attendant for 12 hours per week assisting an elderly woman with her daily activities and accompanying her to appointments. (T. at 20-21, 34-37, 120-21, 123-27, 144-45, 158-60, 170.) Plaintiff also testified that she was attending an English language GED class. (T. at 21, 42-43, 45-46, 48.)

In light of the foregoing, it was reasonable for the ALJ to find Plaintiff's subjective allegations not credible to the disabling extent alleged. (T. at 19-21.) The ALJ determines issues of credibility, and deference should be given his judgment because he heard Plaintiff's testimony and observed her demeanor. *See Garrison v. Comm'r of Social Sec.*, 2010 WL

2776978, *5-7 (N.D.N.Y. 2010). The ALJ is entitled to rely on the medical record and evaluation of Plaintiff's credibility in determining whether she experienced disabling symptomatology. *See Dumas v. Schweiker*, 712 F.2d at 1553 (citations omitted). In finding that Plaintiff could perform a range of light work, the ALJ applied the appropriate standard by properly considered Plaintiff's subjective complaints, and his determination is based upon substantial evidence.

### C. Vocational Expert

Generally, the Commissioner meets his burden at the fifth step by resorting to the applicable medical vocational guidelines (the "grids"). *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)). The grids take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience. *Id*. "Based on these considerations the grids indicate whether the claimant can engage in any substantial gainful work existing in the national economy." *Id*.

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner at Step Five to prove that a job exists in the national economy which the claimant is capable of performing. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. §§ 404.1560(c), 416.960(c) (2012). Work exists in the national economy when it exists in significant numbers either in the region where claimant lives or in several other regions in the country. 20 C.F.R. §§ 404.1566(a), 416.966(a). In making this determination, the ALJ may apply the grids or consult a vocational expert. *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2. If the claimant's characteristics match the criteria of a particular grid rule, the rule directs a conclusion

as to whether he or she is disabled. *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996).

However, if a claimant suffers from nonexertional impairments that "significantly limit the range of work permitted by exertional limitations," the ALJ should elicit testimony from a vocational expert to determine if jobs exist in the economy that the claimant can still perform. *Id.* at 39 (quoting *Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986)); 20 C.F.R. §§ 404.1566(e), 416.966(e). The vocational expert may testify as to the existence of jobs in the national economy, and as to the claimant's ability to perform any of those jobs, given his functional limitations. *See Colon v. Comm'r of Soc. Sec.*, No. 6:00-CV-0556, 2004 WL 1144059, at *6 (N.D.N.Y. Mar. 22, 2004) (Sharpe, J.).

"Exclusive reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations." *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (finding the ALJ erred in applying the grids to deny benefits in a case where it was undisputed that the claimant suffered from nonexertional impairments). "The Grids are inapplicable in cases where the claimant exhibits a significant nonexertional impairment." *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013). This is where the nonexertional impairment has more than a negligible impact on a claimant's ability to perform the full range of work. *Id.* (citing *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010)). An impairment is non-negligible when it so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity. *Id.* (finding that the ALJ erred by not determining whether claimant's reaching limitation was negligible or precluded reliance on the grids).

If a claimant has nonexertional limitations that significantly limit the range of work permitted by his exertional limitations, the ALJ is required to consult with a vocational expert.

*Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (citing *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 986) (citations omitted)). A nonexertional limitation is one imposed by the claimant's impairments that affect her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments such as pain. *Rosa*, 168 F.3d at 78 n.2 (citing *Soblewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997); 20 C.F.R. § 404.1569a(c)). The existence of nonexertional limitations does not automatically preclude reliance on the grids, or require that the ALJ consult a vocational expert. *Id.* Where the claimant's nonexertional limitations did not result in an additional loss of work capacity, an ALJ's use of the grids is permissible. *Id.* at 411.

Here, Plaintiff has a severe nonexertional limitation in the form of profound hearing loss in her right ear. (T. at 16.) *See also* SSR 85-15, 1985 WL 56857 (impairments of hearing loss are non-exertional). The ALJ noted that Plaintiff's hearing loss was a significant non-exertional limitation. (T. at 23.) The ALJ also concluded that Plaintiff needed to wear noise protection when exposed to greater than 75dB continuously and her instructions and interface with others should be given so that Plaintiff could see the speaker's face. (T. at 19, 23.) Because he did not call a vocational expert, the Plaintiff argues that the ALJ failed to consider to what extent the need for face-to-face communication erodes the base of available jobs and thus he should have called a vocational expert. (Dkt. No. 13 at 12.)

The Court does not agree and finds that the ALJ's reliance on the grids was appropriate under the circumstances presented here. "[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guideline," rather such is "a case-by-case" determination considering whether the guidelines adequately reflect a claimant's abilities or whether nonexertional impairments constitute such a

significantly limiting factor that other testimony is required.  *Bapp*, 802 F.2d at 605.

Here, the ALJ concluded, based upon the evidence of record, that the Plaintiff retained the ability to hear and understand simple oral instructions, communicate simple information, and perform simple unskilled work.  (T. at 19, 23.)  *See also* SSR 96-9p; SSRP85-15.  This determination was supported by substantial evidence of record.  Specifically, the physician with whom she treated for her hearing loss did not give an opinion that she had a diminished work capacity due to her hearing loss.  *See* T. at 526-27.  Rather, Dr. Wanamaker found that although Plaintiff had profound sensorineural hearing loss on the right side, her hearing was within normal limits on the left such that she did not need a hearing aid on that side.  *Id.*  He also found she had an "excellent word comprehension score of 100% on the left."  (T. at 526.)  Dr. Wiesner and Dr. Van Gorder found that she only had a mild impairment regarding concentration.  (T. at 475, 490.)  The ALJ specifically noted that evidence of record showed Plaintiff's speech could be understood, and she functioned without hearing aids.  (T. at 23, 526-27.)  Additionally, Plaintiff worked part time during the relevant period as a home attendant assisting an elderly woman with her daily activities.  (T. at 34-37, 120-21, 123-27, 144, 158-60, 170.)  The record is devoid of any incident where Plaintiff's hearing loss affected her ability to work and the ALJ is entitled to rely on what the record does not say.  *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) (citations omitted).  Thus, substantial evidence supports that Plaintiff's hearing loss does not constitute a significant diminishment of her capacities so that her nonexertional impairment precluded the ALJ from using the grids.  As such, the ALJ's reliance on the grids was not error.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the decision of the Commissioner be affirmed.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: September 5, 2014
       Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge